IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, LUFKIN DIVISION

| | |
|---|---|
| BURNS, MORRIS & STEWART LIMITED PARTNERSHIP, ) ) ) Plaintiff, ) ) v. ) ) MASONITE INTERNATIONAL ) CORPORATION and MASONITE ) ENTRY DOOR CORPORATION ) Defendants. ) | Civil Action No. 9:04:CV00168*RHC<br><br>Judge Clark |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION
FOR SUMMARY JDUGMENT OF NONINFRINGEMENT**

**I.     INTRODUCTION**

BMS has failed to raise a genuine issue of material fact as to whether each limitation of claim 2 of the '209 patent is present in Masonite's accused product. Specifically, BMS has failed to show that Masonite's product includes a jamb having an upper wooden portion and a lower plastic portion, given the corner key and jamb are separate parts. Further, BMS has failed to show that the corner key and wooden jamb are 'integrally formed' as required by claim 1. Thus, BMS has failed to establish literal infringement of the '209 patent. *See Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)(every limitation set forth in a claim must be found in an accused product to establish literal infringement). Furthermore, BMS has failed to rebut the presumption of surrender under the doctrine of prosecution history estoppel, and therefore fails to show infringement under the doctrine of equivalents. Therefore, summary judgment of noninfringement is warranted.

1

### A. The Corner Key and Wooden Jamb Are Separate Parts on the Masonite Product.

In order to prove literal infringement, BMS must show that the corner key is the 'lower portion' of the side jamb. BMS simply asserts that the corner key and the wooden jamb of Masonite's product are connected to form the side jamb, but fails to provide any evidence supporting such a conclusion.

The undisputed evidence indicates that the corner key is not part of the side jamb, but rather a separate part. The corner key is an injection molded plastic component that is separately formed from the wooden jamb. (Kon Dec., ¶2). The corner key is manufactured by a third party vendor, shipped to Masonite's door sill supplier, and then attached to the door sill by the sill supplier. (Kon Dec. ¶13). The connected sill and corner key are then shipped to Masonite. (Kon Dec. ¶13). Should the length of the jamb need to be shortened, either the corner key or the header must be removed prior to cutting the jamb. (Kon Dec. ¶11). Thus, the corner key is not cut or shaped "just like a solid wood jamb".

Therefore, BMS's contention that Masonite's product includes a side jamb having an upper wooden portion and a lower plastic portion is unsupported by the evidence. The corner key may be 'lower' than the wooden jamb when the door frame system is installed in an opening, but it is certainly not a 'portion' of the jamb. Rather, it is a separate component that is connected to the sill and the wooden jamb after the jamb has been formed. The Court specifically noted that the claim cannot be interpreted to include such a product. (Berenato Dec., Exhibit E, p. 13, lines 5-8).

2

### B. The Corner Key and the Wooden Jamb Are Not Permanently Connected Together.

The corner key and wooden jamb may be easily dismantled, and such dismantling does not destroy the integrity of either the corner key or the jamb. It is a relatively easy procedure to remove the corner key from the jamb, which may be done with a screwdriver. (Kon Dec. ¶9). BMS asserts that the Masonite product it purchased included a corner key attached to the jamb with screws and staples. The corner key is typically connected by screws only. As such, Masonite did not discuss staples in its original brief. However, the use of either screws or staples to attach the corner key to the jamb does not render the two parts 'integrally formed' as required by the '209 patent. Neither screws nor staples would secure the corner key to the jamb in a relatively permanent fashion.

Masonite has shown that the corner key may be easily detached from the wooden jamb, which may be done without affecting the integrity of either constituent part. Kon Dec., ¶ 9. Such detachability is the opposite of permanence. Indeed, in *K2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999), the Federal Circuit affirmed summary judgment of no literal infringement based on the distinction between permanent connections like rivets and adhesive laminates and removable connections like screws. 191 F.3d at 1365. The relevant claim language at issue in *K2* was 'permanently affixed' to describe a connection between the bootie and base of an in-line skate. The patent specification suggested such permanence could be achieved by rivets or adhesive laminates. *Id.* The accused product used a rivet in the toe area but only a removable screw to affix the heel area. *Id.* at 1361. The court held that there was no literal

3

infringement because a removable screw, unlike a rivet or adhesive laminate, is not a permanent connection:

> Screws, unlike rivets and laminates, are meant to be unscrewed, that is, to be removed. A rivet or laminate, to the contrary, is meant to remain permanent, unremovable unless one is bent on breaking the permanent structure apart.

*Id.* at 1365. This holding applies equally to the distinction between the permanency required by the integrally formed claim limitation and the removability of Masonite's corner key. *See V-Formation, Inc. v. Benetton Group, Spa*, 401 F.3d 1307, 1312 (Fed. Cir. 2005)(affirming district court's use of *K-2* decision as corroboration of its claim construction regarding the permanency of rivets as fasteners).

BMS has misconstrued this Court's Markman Order, claiming that Masonite is not entitled to summary judgment based upon the fact that their frame uses screws. BMS cites to page 14 of the Order, which provides:

> For example metal dowel rods or screws might be inserted in the end of a durable portion, running parallel to the portion into the end of the wooden portion *to strengthen the glued joint*. Other possibilities could be contemplated to form a joint that was relatively permanent.

(Berenato Dec., Exhibit E, p.14, lines 5-8)(emphasis added). Thus, dowels or screws could be provided to strengthen a glued joint. Such possibilities therefore provide for a glued joint, such as disclosed in the '209 patent, which is further reinforced using dowels or screws in addition to the adhesive bond. BMS has failed to provide any evidence suggesting that the Masonite product includes a glued joint, and in fact the Masonite product does not include a glued joint.

Thus, BMS has misinterpreted a sentence of this Court's Order, and neglected to appreciate the Order in its entirety. This Court also specifically stated in its Order that,

4

the claim cannot be interpreted as a wooden jamb with a piece of durable material wrapped around the wood, <u>or as a durable piece which may be added to a wooden jamb</u> at the discretion of the house builder or carpenter.

(Berenato Dec., Exhibit E, p. 13, lines 5-8)(emphasis added).

Masonite's pre-hung door system includes a wooden jamb with a corner key component added to the jamb (and sill). If the use of metal fasteners for connecting two components were to render the two components 'integrally formed', the entire frame would be integrally formed with the wall given it is typically nailed to the studs surrounding the opening. The door sill would be integrally formed with the floor, given it is typically screwed into the floor. The door would be integrally formed with the frame, given it is secured thereto by metal hinges, which are screwed into the jamb. Obviously, the Court did not intend for such a meaning of 'integrally formed'. Contrary to BMS's assertions, the corner key and jamb are not integrally formed under this Court's previous construction. The corner key is not attached in a relatively permanent fashion so that the two parts are 'just like a solid wood jamb'.

BMS also contends that the corner key and jamb are not easily disassembled because a tool is required for disassembly. There is no support for implying, as BMS attempts to do, that parts which are disassembled using a tool must be attached in a relatively permanent fashion. Certainly, a screwdriver is required to remove hinges from a door. Common sense refutes BMS's assertion that such an attachment is not easily disassembled. Certainly, this Court may take judicial notice that two components that are screwed together may be easily dismantled by unscrewing the screws using a screw driver.

### C. The Integrity of the Wooden Jamb Would Not Be Adversely Affected Should the Corner Key Be Removed.

BMS contends that the removal and subsequent re-insertion of the screws connecting the corner key to the jamb would result in a connection of diminished strength as compared to a connection in which the screws have not been removed. BMS's contention is flawed because the connection at issue is not between two portions of a jamb which have been connected together to form a single jamb unit. Rather, the connection is between the corner key and the jamb, which are two separate parts. The corner key is specifically designed for receiving screws (Kon Dec. ¶5), which are capable of being screwed into or out of the corner key. The corner key may be removed from the jamb by simply removing the screws, which does not adversely affect the integrity of either the corner key or the jamb. (Kon Dec. ¶9). While BMS asserts that factual issues are raised as to structural integrity, it provides no evidence supporting its conclusions.

The '209 patent indicates that "hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door". Berenato Dec., Exhibit B, column 3, lines 18-19. As commonly known, such hinges and strike plate are typically secured using screws, which are screwed into the jamb. Surely BMS does not now assert that the attachment of hinges and a strike plate would adversely affect the integrity of the disclosed frame. Likewise, screwing the corner key into the wooden jamb does not affect the integrity of the Masonite product.

In any event, the claims of the '209 patent do not include any limitation regarding structural integrity. Thus, BMS provides bald conclusions about the structural integrity of Masonite's product, which are irrelevant to the issues at bar.

### D. BMS Has Failed to Show Infringement Under the Doctrine of Equivalents.

BMS is precluded from recapturing through equivalency subject matter that was surrendered during prosecution of the parent '943 patent. BMS admits that the narrowing amendment that added the limitation integrally formed was made for the purpose of patentability over prior art. Thus, BMS is subject to the presumption that it surrendered the entire territory between the original claims and the amended claims. *Festo Corp. v. Shoketsu Kinzoku KogyoKabushiki Co.*, 535 U.S. 722, 741 (2002)(*Festo I*). BMS therefore bears the burden of rebutting this presumption, *Festo Corp. v. Shoketsu Kinzoku KogyoKabushiki Co.*, 344 F.3d 1359, 1371-72 (Fed. Cir. 2003), *cert denied*, 541 U.S. 988 (2004)(Festo II), and whether it has done so is a question of law. *Id.* at 1367.

BMS has not rebutted the *Festo* presumption of surrender. There are three criteria that BMS might have argued in attempted rebuttal: that the alleged equivalent (1) could not reasonably have been described at the time the amendment was made, (2) was tangential to the purpose of the amendment, or (3) was not foreseeable (and thus not claimable) at the time of the amendment. *Research Plastics, Inc. v. Federal Packaging Corp.*, 2005 WL 1981447 (Fed. Cir. Aug. 18, 2005). BMS does not try to show that Masonite's product could not reasonably have been described or was not foreseeable, and its attempt to rebut the presumption under tangentiality is without merit.

BMS attempts to assert that the amendment at issue, namely amending the claims in the '943 patent to include the 'integrally formed' limitation, is peripheral or tangential to the alleged equivalent in question. The Federal Circuit has stated that the primary consideration in determining when an amendment bears only a tangential relation to the equivalent in question is whether the reason for the narrowing amendment was

7

peripheral, or not directly relevant, to the alleged equivalent. *Rhodia Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005). This criterion focuses on the objectively apparent reason for the narrowing amendment and looks only at the prosecution history record. *Festo II*, 344 at 1369-1370.

BMS's attempt to argue tangentiality was specifically rejected by the *Rhodia* court. BMS notes that the integrally formed limitation was added to overcome the Raynak and Hsu prior art references, which together disclosed a side jamb whose lower portion was wrapped in plastic. BMS then implies that because the Masonite product does not include a jamb whose lower portion is wrapped with plastic, the amendment adding integrally formed was tangential to the alleged equivalent found in the Masonite product. The *Rhodia* court rejected a similar argument: that because the accused products were not within the prior art sought to be distinguished by the narrowing amendment, that amendment was tangential to the accused equivalents. 402 F.3d at 1383.

In rejecting this argument, the Federal Circuit first noted that while an amendment made to avoid prior art that contains the equivalent in question is not tangential, it does not follow, however, that equivalents not within the prior art must be tangential to the amendment. *Id.* The court then contrasted the characteristics imposed by the claim limitation added by amendment in that case with the form of the accused product and prior art and concluded that prosecution history estoppel applied:

> Rhodia presumptively surrendered all forms of silica with dust levels too great to be considered dust-free and non-dusting. As a claimed improvement over the prior art, the relative dustiness of Rhodia's invention was at issue during prosecution and thus the reason for the narrowing amendment cannot be said to be tangential to an equivalent that has that characteristic.

*Id.* The same analysis applies here. The type of connection between the portions of the

8

side jamb was at issue during prosecution of the parent '943 patent, and BMS surrendered all forms of connection (whether wrapped, screwed or otherwise) that do not result in the permanence required of integrally formed. Because BMS surrendered all forms of nonpermanent connection, it cannot claim that this amendment is tangential to the alleged equivalent in this case. Thus, BMS cannot rebut the *Festo* presumption under the tangentiality criterion.

Moreover, the corner key is dissimilar in appearance to the wooden jamb. The non-permanent attachment of the corner key to the wooden jamb results in a non-continuous looking frame that cannot be considered to be a single unit with the wooden jamb. BMS notes that the three color photographs submitted to the Examiner during prosecution of the parent application illustrated that the upper and lower portions of its jamb were "imparted with the same cross section". By contrast, Masonite's corner key does not have the same cross section as the wooden jamb. The corner key includes a side surface having an overhang portion that overlies a portion of the door sill (Kon Dec. ¶6), as well as three upwardly extending peripherally located tabs that locate the jamb on the flat upper surface (Kon Dec. ¶8). The components are differently shaped and differently sized. *Id*.

Accordingly, there can be no dispute that the accused products do not infringe claim 2 of the '209 patent under the doctrine of equivalents.

## II. CONCLUSION

For the reasons set forth herein as well as those submitted in Defendants' supporting Memorandum, Defendants' respectfully request its Motion for Summary Judgment of Non-infringement be granted. Defendants reserve the right to supplement this Reply pending the outcome of the Markman hearing, which will be held prior to the Court's determination of this Motion.

                                        Masonite International Corporation and
                                        Masonite Entry Door Corporation
                                        Defendants,

Date: 9/23/05       By: _JWB/wcs_
                                       Joseph W. Berenato, III
                                       Berenato, White & Stavish, LLC
                                       6550 Rock Spring Drive
                                       Suite 240
                                       Bethesda, MD 20817
                                       301-896-0600

                                       Daniel V. Flatten
                                       Jenkens & Gilchrist
                                       Suite 2700
                                       5 Houston Center
                                       1401 McKinney
                                       Houston, Texas 77010
                                       (713) 951-3300
                                       (713) 951-3394 [Fax]
                                       dflatten@jenkens.com

                                       Attorney for Defendants