IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BURNS, MORRIS & STEWART LIMITED PARTNERSHIP, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 9:04-CV-168 |
| v. | § § | JUDGE RON CLARK |
| MASONITE INTERNATIONAL CORPORATION | § § § § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER CONSTRUING CLAIM TERM OF
UNITED STATES PATENT NO. 5,873,209**

Plaintiff Burns, Morris & Stewart Limited Partnership ("BMS") filed suit claiming infringement of United States Patent No. 5,873,209 ("the '209 patent"). The Parties entered into a stipulation agreeing to adopt the claim construction decision rendered by this court in the matter of *Burns, Morris & Stewart Limited Partnership v. Endura Products*, Civil Action No. 9:04-cv-23 [Doc. #62], dated May 11, 2005, with the exception of the disputed term "integrally formed." The court conducted a *Markman* hearing for the purpose of hearing evidence and argument that would assist the court in interpreting the meaning of the claim term in dispute. Having carefully considered the patent, the prosecution history, the parties' briefs, and the arguments of counsel, the court now makes the following findings and construes the disputed claim term as follows.

**I. Claim Construction Standard of Review**

In *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) ("*Markman I*"), the Federal Circuit held that claim construction is a matter of law. In affirming this decision, the Supreme Court in *Markman v. Westview Instruments, Inc.*, 116 S. Ct. 1384 (1996) ("*Markman II*"), stated, "[w]e hold that the construction of a patent, including terms of art within its claims,

is exclusively within the province of the court." *Id.* at 1387. "[J]udges, not juries, are the better suited to find the acquired meaning of patent terms." *Id.* at 1395.

> The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly. In the exercise of that duty, the trial judge has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties.

*Exxon Chem. Patents, Inc. v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (citations omitted).

In performing this duty, this court is guided by several principles. The claims should be construed in light of the ordinary meaning of the claim language, as well as the patent specification and prosecution history. *Markman I*, 52 F.3d at 979-80. The Federal Circuit Court of Appeals has recently affirmed and clarified the principles to be followed by the court in claim construction. *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). "'[T]he claims of the patent define the invention to which the patentee is entitled to the right to exclude.'" *Id.* at 1312 (citation omitted). "Because the patentee is required to define precisely what his invention is, it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1315 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

The court should first determine the ordinary meaning of a disputed term. The words of a claim are generally given their ordinary and customary meaning. *Phillips* 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. Analyzing "how a person of ordinary skill in the art understands a claim term" is the starting point of a proper claim construction. *Id.*

2

A "person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Where a claim term has a particular meaning in the field of art, the court must examine those sources available to the public to show what a person skilled in the art would have understood disputed claim language to mean. *Id.* at 1414. Those sources "include 'words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (citation omitted).

"[T]he ordinary meaning of claim language as understood by a person skilled in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1414. In these instances, a general purpose dictionary may be helpful. *Id.* However, the notion of consulting extrinsic evidence, such as dictionaries, to determine the ordinary and customary meaning, before consulting the intrinsic record, as outlined in *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), was essentially overruled by *Phillips*. *See Phillips*, 415 F.3d at 1320.

Instead the Court emphasized the importance of the specification. "The specification 'is always highly relevant to the claim construction analysis . . . it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A court is still authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties. *Phillips*, 415 F.3d at 1317, but their use should be limited to edification purposes. *Id.* at 1319.

The intrinsic evidence, that is, the patent specification, and, if in evidence, the prosecution history, may clarify whether the patentee clearly intended a meaning different from the ordinary

3

meaning or whether he clearly disavowed the ordinary meaning in favor of some special meaning. *See Markman I*, 52 F.3d at 979.  Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated "clear intent" to deviate from the ordinary and accustomed meaning of a claim term by redefining the term in the patent specification. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

The patentee may deviate from the plain and ordinary meaning by characterizing the invention in the prosecution history using words or expressions of manifest exclusion or restriction, representing a "clear disavowal" of claim scope. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).  However, absent a "clear indication" from the patent specification or a "clear disavowal" in the prosecution history; there is a "heavy presumption" that a claim term is given its plain and ordinary meaning. *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).  If the patentee clearly intended to be its own lexicographer, the "inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

## II. Claim Construction

### A. The '209 Patent

Richard Hagel is the inventor of United States Patent No. 5,873,209.  The assignee is Burns, Morris & Steward Limited Partnership.  The '209 patent is based upon a process for making "engineered" wood. In general, this involves joining short pieces of lumber to make long pieces which are used in construction.  The joints are almost indiscernible to visual inspection, but the grain of the adjoining pieces does not match.  Therefore, the resulting product is not suitable for fine cabinetry and high end products which are stained.  However, the end product is about as strong as a similar length of solid lumber, and for all intents and purposes can be used in the same way as a similar piece of lumber.

The '209 patent was filed as a continuation patent of United States Patent No. 5,661,943 ("the '943 patent"), invented by Richard Hagel and assigned to BMS. The '209 patent replaces the piece at the bottom of a component, for example the side jamb of a door frame, with a piece made from another material which is moisture and insect resistant.

The abstract of the patent describes the invention as the following:

> A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**B. Claim 1**

The only claim term in dispute are the words "integrally formed" in claim 1. This claim is set out below with the disputed term highlighted in **BOLD**

Claim 1 reads: A frame, comprising: a top jamb; two side jambs having upper and lower portions that are **integrally formed**, said upper portion being made of wood, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

**1. Claim 1, "integrally formed"**

Earlier patents had been issued for wooden building components and substitutes for whole pieces of lumber, which were constructed, or engineered from smaller pieces. These involved joining pieces of wood together, to form larger, usable pieces, which were not intended to be disassembled, although they could be cut and shaped like solid pieces of lumber. *See* United States Patent No. 5,074,092 ("092" or "Norlander"). The patent in dispute describes a similar process, but includes the addition of a "second portion" made of a moisture and insect resistant material. However, it is clear from the claim language, the rest of the specification, and the

drawings, that what is described and intended is a frame with side jambs which are constructed as single complete pieces - for all intents and purposes as though they were made from single pieces of lumber.[1]

This patent, and this claim term in particular, has been the subject of at least two prior constructions. This court defined "integrally formed" in the case of *Burns, Morris & Stewart Limited Partnership v. Endura Products*, Civil Action No. 9:04-cv-23 (E.D. Tex.), as:

> Connected together so as to make up a single complete piece or unit, or so as to work together as a single complete piece or unit, and so as to be incapable of being easily dismantled without destroying the integrity of the piece or unit.

The Hon. Robert Bryan, in the case of *Trinity Glass International Inc. v. Burns, Morris & Stewart Limited Partnership*, Civil Action No. C04-5330 (W.D. Was.), construed "integrally formed" as follows:

> Permanently connected together so as to make up a single completed piece or unit, so as to be incapable of being dismantled without destroying the integrity of the piece or unit and/or on or both of the constituent portions.

The prior construction of this court, and of Judge Bryan, are instructive, and provide a basis for analysis by this court, but they are not binding on this court. *See Texas Instruments, Inc. v. Linear Technologies Corp.*, 182 F. Supp. 2d 580, 586 (E.D. Tex. 2002). Additionally, the court must consider the impact of *Phillips*, which has since been decided. Finally, the parties have presented new arguments. Accordingly, the claim term will be analyzed *de novo*.

---

[1] The parties agreed, and the court concludes that a person of "ordinary skill in the art in the subject matter of the '209 patent would have three to five years' experience in the woodworking arts, including various manufacturing techniques such as setting up and operating the necessary machinery to produce frames and wood joining techniques." *See* Claim Construction Hearing Transcript, p. 29-30.

6

### a. Masonite's Position

Masonite's proposed definition is:

Permanently connected together so as to make up a single complete piece or unit having a uniform peripheral contour, or so as to work together as a single complete piece or unit, and so as to be incapable of being easily dismantled without destroying the integrity of the piece or unit or one or both of the constituent portions making up the piece or unit.

Masonite argues that the definition should contain the limitation of being "permanently connected together." As noted above, the definition adopted by Judge Bryan included "permanently." This court, in its earlier opinion construing this same term of this patent, noted during the hearing that "integrally formed" denoted something that was "relatively permanent."

The preferred embodiment, and the photos submitted to the examiner, do show finger jointing and gluing. '209 patent, Col. 3, l. 2-3. This is a permanent type of joinder according to the testimony. However, the specification also states that "other wood joints are contemplated, such as edge gluing or their equivalents." The summary uses the phrase "connected end to end with a glued finger joint or other mechanical connection to assemble the component." '209 patent, Col 2, l. 6-7.

These references indicate that connections other than finger joints may be used. The fact that the preferred embodiment happens to use finger joints does not import that limitation into the claim language. While these references would not broaden the claim language to allow an easily disassembled jamb, or a structure composed of interchangeable parts, they also do not limit the claim to joints that could never be disassembled or joints without metal fasteners. For example a double pointed screw might be inserted in the end of a durable portion, running parallel to the portion into the end of the wooden portion to make a joint, or to strengthen a glued

7

end to end joint.  Other possibilities could be contemplated to form a joint that was not easily dismantled but was not "permanent."

Upon further reflection, and careful examination of the prior rulings of Judge Bryan and this court, it seems that the term in dispute is more correctly defined without a temporal element such as "permanently."  As noted at the hearing, nothing is truly "permanent" and anything can be dismantled if one just gets a "bigger hammer."  The court needs to be careful about confusing the jury by using a word such as "permanently" that could easily be understood by jurors as placing more of a limitation than the claim actually has.

Masonite argues that statements made by BMS in the prosecution of its patent before the European Patent Office ("EPO") should estop BMS from claiming anything but a "permanent joinder."  Representations to a foreign patent office may be considered, when they comprise relevant evidence in the context of considering the doctrine of equivalents.  *See Caterpillar Tractor Co. v. Burko, S.P.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983).  However, in the context of claim construction, differences in international requirements for patent prosecution could make reliance on representations before foreign patent offices inappropriate.  *See TI Group Automotive Sys. (N. Am.), Inc., v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004).  Additionally, adopting Masonite's argument in this regard would require the court to rely upon extrinsic evidence of what happened before a foreign patent office, without a complete presentation of such evidence, nor a complete understanding of what happened before the foreign body and why that was important under foreign law.  Therefore, while Masonite may raise this argument, should the doctrine of equivalents become important, the court will not use the incomplete evidence in the record on this issue as a basis for defining a claim term at the *Markman* hearing.

Masonite also makes a claim of improper conduct or inequitable conduct because BMS stated that the '209 patent was a "continuation" rather than a "continuation in part." (Masonite Claim Construction Brief, p. 24). Again, this is a *Markman* hearing, for the purpose of claim construction. Whether BMS could be found to have committed inequitable conduct, or a "fraud on the PTO" is a matter dealing with the issue of infringement. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997). Whether the patent is properly classified as a "continuation" or "continuation in part" and whether such classification was a mislabeling which somehow violated the statute, and is in the nature of a "fraud in the PTO," or inequitable conduct, may have to be decided, at least in part, under the clear and convincing evidence standard of proof. *See, Burlington Indus, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). The court will reserve any such determination until later.

Finally, Masonite argues that the definition should also include a limitation of "having a uniform peripheral contour." On close questioning by the court, counsel for Masonite admitted that such words could not be found in the claim itself, the specification, nor in the prosecution history. Masonite argued that such limitation should be implied from the use of the word jamb, because most door jambs are uniform. In the first place, just because most door jambs are uniform rectangles does not mean that all door jambs are necessarily so. For example, it would not be surprising to find a door jamb and other building elements which did not have uniform contours in a building designed by Gaudi or a student of his modernist style. Regardless of this, the court cannot import or imply limitations on the claim language which are neither found in the claim itself, nor even hinted at in the specification and prosecution history.

**b. BMS's Proposal**

BMS proposed the following definition for "integrally formed:"

Connected together so as make up a single complete piece or unit, or so as to work together as a single complete piece or unit.

The definition offered by BMS just does not go far enough. It would include any type of connection, including exterior screws attaching a connecting plate, a loose dowel with removable discs, a C-clamp, or one of the wide black clips used to bind papers.[2] Claims should not be read to ensnare prior art. *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1153 (Fed. Cir. 1997). Claims should, "*if practicable* . . . be so interpreted as to uphold and not destroy the rights of the inventor." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (citing *Turril v. Mich. S & N. Ind. R.R.,* 1 Wall 491, 68 U.S. 491, 510 (1863)) (emphasis in original). The court may not rewrite a claim to preserve validity. *See Nazomi*, 403 F.3d at 1368. However, a patent is presumed to be valid, and the court may consider the actions of the Patent Examiner and amendments required by the Examiner in defining a disputed term during the prosecution history. *See Phillips*, 415 F.3d at 1317-18.

In this regard the court takes into account the rejection of the initial application by the Patent Examiner, and the addition of the words "integrally formed" to the claim language. The '209 patent is a continuation of the '943 patent and the language of claim 1 in each patent is the same, except for describing the lower durable piece in the '209 patent as made of "a second material" instead of " a wood particulate that is mixed with resins" as in the '943 patent. The

---

[2] BMS, at the *Markman* hearing, offered an alternate definition: "generally constructed to remain connected together so as to make up a single complete piece or unit." The court rejects this formulation for the same reasons it rejects the original proposal.

prosecution history indicates that the application for what would become the '943 patent, initially merely indicated that the side jambs would have upper and lower portions, with no reference to how they were attached. The Patent Examiner rejected the claim "under 35 U.S.C. § 102(e) as being anticipated by RAYNAK in view of HSU." RAYNAK, United States Patent No. 5,437,130, discloses a jamb made from pieces of lumber. HSU, United States Patent No. 5,553,438, discloses a wooden pole with the bottom section being pressure treated and then covered with thermoplastic.

BMS argued to the Examiner that the invention in this case was different, in that the durable portion was not merely pressure treated wood, or wood wrapped in plastic, but rather was "formed from" a wooden portion and a durable wooden portion. BMS Appendix, p. 154-155. BMS also submitted photos of the jambs showing them finger jointed to form a single piece. BMS Appendix p. 158-160.

The Examiner required an amendment which inserted "that are integrally formed" so that the claim language now is: "Two side jambs having upper and lower portions that are integrally formed . . . ." The court does not see how, and nobody has argued that, "formed," in the context of fastening pieces of wood and a durable material, can mean anything other than "attached" or "connected." While the durable portion may be a plastic or some other extruded substance, there is no hint in the intrinsic or extrinsic evidence that the wood portion could be extruded together with the durable portion, like putty or clay, or melted together like plastic or metal, to be shaped by pressure or a mold.

On the other hand, if "attached" or "connected" is all that is meant, then what purpose is served by "integrally?" "Integrally" modifies "formed," and therefore puts some limit on the type of joinder involved.

BMS argues that integral was defined in *In re Morris*, 127 F.3d 1048 (Fed. Cir. 1997) and cases cited therein. These mostly describe definitions used by the Patent Office in deciding whether to issue a patent, and all involve different technologies. The court is not going to rely on these definitions. *See Medrad Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1320 (Fed. Cir. 2005).

The parties agreed at the hearing that the term "integrally formed" was not a term of art which would have a meaning to carpenters, wood workers, or those skilled in the art in question, which is different from the meaning ascribed in ordinary usage by lay persons. Recognizing that the claim must be defined as understood by one skilled in the art, in light of the language used in the patent documents, this is a case in which reference to a general purpose dictionary may be helpful. *See Phillips*, 415 F.3d at 1314.

"Integrally" implies something that is part of the whole or is needed for completeness. *See* Meriam-Websters Collegiate Dictionary 606 (10th ed. 2002). However, as noted by Judge Bryan, integrally is not being used in this patent merely in the sense of a cog inside a machine, which is "integral" to the mechanism, but is a separate moving part. The durable part and the wooden part of the side jambs, as described in the claim and specifications, are joined, and do not move in relation to each other.

The claim cannot be interpreted as a wooden jamb soaked in preservative or with a piece of durable material wrapped around the wood. The claim does not contemplate a kit of interchangeable parts, some of which are durable, to be assembled at the job site to fit variously

12

sized openings. Any of these interpretations would contradict the statements made by BMS to the examiner to distinguish prior art, and would render "integrally formed" nugatory.

The "Background of the Invention," describes fingerjointing small pieces of wood and joining them "end to end to produce a single long piece . . . ." '209 patent, Col. 1, l. 47-48. The specification states that the wood and durable portions are "connected end to end with a glued finger joint or other mechanical connection to assemble the component." '209 patent, Col. 2, l. 6-7. The specification also states that the assembly of the wood portion with the durable portion "forms a complete side jamb 1 or 2." '209 patent, Col. 3, l. 13. These references support a definition which implies that the wooden portion and the durable portion are put together to form a single piece or unit, which is intended to be used like the single piece of lumber formerly used for door jambs.

The durable portion must be attached to the wooden portion, in such a way that the jamb may be shaped with a tool (just like a solid wood jamb), or perhaps even shortened by cutting, although, with a pre-hung door, this would be unusual. Unless "integrally formed" is useless surplusage, the attachment cannot just be something like an exterior clip or a wrap of tape. The attachment or connection must become a part of the whole, like glue, or be interconnected with the whole, like a finger joint or a lap and groove type joint. The use of glue and interconnected joints in combination is clearly contemplated. One or more screws running between the wooden piece and the durable piece, parallel to the length of the jamb, might take the place of, or be used with, glue.

Therefore, the court construes the claim term in dispute as follows:

"**Integrally formed**" means: "connected together so as to make up a single complete piece or unit, in such a way that the connection becomes part of, or is interconnected with, the piece or unit, as by gluing, an interconnecting joint, or internal screws. The connector is not merely attached to, or wrapped around, the outside surface of the piece or unit.

Since this definition modifies the prior one issued by this court, and the one given by Judge Bryan, a very experienced judge, it is worth discussing the reasons for the differences. As stated earlier, there seems to be no basis in the patent documents for including a temporal limitation which requires, or implies, some type of permanence. Nothing is truly permanent, and the court does not want to confuse a jury with a term which may have to be defined as not implying "to the end of time" or "indestructible."

This court previously included in its definition "incapable of being easily dismantled without destroying the integrity of the piece or unit." Judge Bryan adopted this formulation without the word "easily." On further reflection, neither formulation adds much to the definition. Anything can be dismantled. Glue can be dissolved, fasteners can be undone, joints can be taken apart, and pieces can even be broken. But whether "easily" or not, once the jamb (the "piece or unit") is dismantled, its integrity is, by definition, destroyed.

### III. Conclusion

The jury shall be instructed in accordance with the court's interpretation of the disputed claim term in the '209 patent.

So **ORDERED** and **SIGNED** this **21** day of **November, 2005.**

_____
Ron Clark, United States District Judge